IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE SEIZURE OF ALL CONTENTS OF | ) | CASE NOS.   4:15-MJ-06009 |
| FIRST MERIT BANK ACCOUNT NO. | ) | 4:15-MJ-06031 |
| 5050037175 | ) | |
| | ) | MAGISTRATE JUDGE |
| and | ) | GEORGE J. LIMBERT |
| | ) | |
| IN RE SEARCH OF 10640 BAYSHIRE | ) | REPLY BRIEF IN FURTHER |
| TRAIL, KIRTLAND, OHIO AND | ) | SUPPORT OF MOTION TO UNSEAL |
| CURTILAGE THERETO. | ) | AFFIDAVITS IN SUPPORT OF |
| | ) | SEARCH AND SEIZURE |
| | ) | WARRANTS |
| | ) | |

COMES NOW Brandon Selvaggio ("Mr. Selvaggio") and submits this Reply to the Government's Opposition to the Motion to Unseal Affidavits In Support of Search and Seizure Warrants.  For the reasons that follow, Mr. Selvaggio respectfully renews his request that the Court grant the Motion to Unseal.

In its opposition brief, the government conflates the motion to stay the civil forfeiture action with the common law right of access to information used to conduct a search and seize property under the Fourth Amendment.  The government's opposition is based largely on the district court's granting of a motion to stay and successive extensions to continue the stay.  The standard for granting a stay of discovery, however, is entirely distinct from the government's burden to rebut the strong presumption in favor of public access to court proceedings.  The government fails to address the presumption and, as a result, Mr. Selvaggio's Motion to Unseal must be granted.

The government's attempt to bootstrap the district court's ruling in the motion to stay the civil forfeiture action is telling. The government fails to articulate how the criminal investigation would be compromised and instead claims with emphasis that "[o]bviously, the ongoing criminal investigation is the compelling reason not to release the affidavits . . . ." ECF No. 10, at p. 4. This blanket justification based on the mere existence of a criminal investigation is contrary to the law in the Sixth Circuit on the common law right of access to judicial documents.

The government cites heavily to the standard and criteria outlined *In re Search of Fair Fin.*, 692 F.3d 424, 432 (6th Cir. 2012). Again, the government conflates two standards: the [public's right of access on First Amendment grounds and the common law right of access. In *Fair Fin.*, the circuit court held that the presumption that attaches to the First Amendment right of access – typically asserted by media – does not apply to search warrant documents. Notably, the *Fair Finance* court expressly recognized that *the common law right of access* is a separate standard and may permit access to search warrant proceedings if "the public's right to know outweighs interests of privacy in sealing a particular document." *Id*. at 433 (*citing United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986)).[1]

More recently, the Sixth Circuit addressed the common law right of public access to judicial records in the context of sealed plea agreements, noting that while the common law right is not absolute the court's "discretion is 'to be exercised in light of the relevant facts and circumstances of the particular case.'" *United States v. Dejournett*, 817 F.3d 479 (6th Cir. 2016) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599, 98 S.Ct. 1306, 55 L.Ed. 570 (1978)). In *Dejournett*, the Sixth Circuit ultimately found that in failing to identify the "'relevant

---

[1] Because of this distinction, Mr. Selvaggio's motion to unseal refers to the analysis of the underlying district court decision in *Fair Fin.* which addressed both the common law and First Amendment right of access. *See In re Search of Fair Fin.*, 2010 WL 3210975 (unpublished disposition). The former issue was not raised on appeal and, therefore, not addressed in the Sixth Circuit's decision cited by the Government. The present motion and the arguments asserted by Mr. Selvaggio are based on the presumptive common law right of access.

facts and circumstances' justifying non-disclosure," the district court's decision not to unseal the judicial record fell short under the common law framework. *Id*. (*citing Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983) ("Having 'supervisory power' or 'discretion' to deny access to documents does not, however, imply the District Court operates without standards.")).

To be clear, the controlling law in the Sixth Circuit on the common law right of access requires a presumption in favor of access, and the reviewing court must conduct a balancing of the competing interests advanced by the parties in order to determine whether that presumption has been rebutted. *See Beckham*, 789 F.2d at 409.  This is necessarily a fact and context specific review and yet, the Government's argument is that a criminal investigation is ongoing and would be compromised without asserting any facts to support this conclusory statement.  Also missing from the Government's opposition is any explanation as to why an alternative to full disclosure – such as partially unsealing or redacting the affidavits – is not appropriate here.  Nor does the Government address whether the information contained in the affidavits made in support of the search warrant is distinguishable from the information provided in support of the seizure warrants, such that the presumptive right of access may apply to one and not the other.

The record is clear that the details of the Government's investigation are already public in the form of the detailed allegations made in the Civil Forfeiture Complaint.  *See generally*, Complaint in Forfeiture, *United States v. $16,765.00 in U.S. Currency*, No. 1:15-cv-1036 (N.D. Ohio May 22, 2015), ECF No. 1 (hereinafter "Complaint").  The allegations in the Complaint as verified by AUSA Tripi are specific, detailed and appear to incorporate statements made by

cooperating witnesses, named and unnamed.[2]  Although the government asserts a need to keep

the affidavits sealed, the details of the criminal investigation have been widely shared as

evidenced by the government's own reference to recent media reports regarding an AT&T

settlement with the FCC for $6.8 million.  The government specifically states that the "scope of

the fraud and complexity of the investigation" is illustrated by the civil settlement between the

FCC and AT&T.  ECF No. 10 at 3.  However, the Order issued by the FCC specifically cites to

the allegations in the forfeiture complaint as evidence and demonstrates why access here is long

overdue:

> In May 2015, while investigating the Companies' principals for drug-related
> crimes and money laundering, the United States Drug Enforcement
> Administration uncovered that DDI and ETS were sham operations that never
> provided any directory assistance service to the customers billed by AT&T. The
> Companies' principals told law enforcement that they submitted fake service
> charges for thousands of AT&T customers (mostly small businesses) over a
> multiyear period. *See United States v. $16,765.00 in U.S. Currency, et al,
> Complaint in Forfeiture*, U.S. District Court, Northern District of Ohio, Eastern
> Division, filed May 22, 2015 (file no. 1:15-cv-01036-CAB) paras. 29-77.

*In the Matter of AT&T Services, Inc*., FCC Order and Consent Decree, dated August 8, 2016

(File No. EB-TCD-15-00019021), Attachment 1.

The FCC's findings are based largely on information provided by the DEA about its

investigation, and the same information was communicated by DEA to AT&T as early as

February, 2015.  *See* FCC Consent Decree, at p. 4, §§ 6-7, Attachment 1.  The press release

issued by the FCC accompanying the Order and Consent Decree with the headline "AT&T to

Pay $7.75 Million for Letting Scammers Bill Consumers for Sham 'Directory Assistance'

Services," and a statement that "[a] phone bill should not be a tool for drug traffickers, money

launderers, and other unscrupulous third parties to fleece American consumers."  FCC Media

---

[2] It is noteworthy that many of the allegations in the Complaint, though verified, are not characterized as statements made by witnesses who were deemed reliable and trustworthy. Instead, the allegations are made as general statements without attribution.

Release, dated August 8, 2016, Attachment 2.

The government should not be allowed to have it both ways. It cannot selectively disclose the details of its investigation in a manner that results in public pronouncements as to the guilt of individuals under investigation, and then seek to deprive those same individuals of the presumptive right of access to the information. The government fails to assert any facts to outweigh Mr. Selvaggio's right of access some 19 months after his home was searched and his property seized. Instead of asserting facts that weigh in favor of sealing, the Government offers to provide those details on an *ex parte* basis only,[3] continuing the cloak of secrecy despite the fact that much of the information is out in the public domain. ECF No. 10 at 2.

It is difficult to conceive of how the investigation could be compromised at this late date. Unsealing the affidavits does not risk exposing the identities of witnesses or targets because much of this information is already known to Mr. Selvaggio. *Cf. In re Search Warrants Issued on Apr. 26, 2004*, 353 F. Supp. 2d 584, 591–92 (D. Md. 2004) (finding that the government "demonstrated no compelling interest" in keeping affidavits sealed, in part, because "it is likely that [the target] either knows or strongly suspects who the informers are"). Even in the unlikely event that the Government has identified additional witnesses not interviewed in the year and a half since the search and seizure warrants were executed, the witnesses themselves are already aware of the government's investigation due to national media coverage relating to the recent settlement between AT&T and the FCC.

The manner in which the investigation has unfolded underscores why the common law right of access and an open courtroom is a "fundamental feature of the American judicial system." *Brown*, 710 F.2d at 1177. The right of access "facilitates public monitoring of the

---

[3] The government's reference to Mr. Selvaggio's recent arrest is not germane to the issue of access. While the charge remains pending the matter has no bearing on this case and relates to a domestic issue involving certain of Mr. Selvaggio's relatives. Most importantly, there has been no conviction.

various government agencies and branches." *See, e.g., United States v. All Funds on Deposit at Wells Fargo Bank in S.F. in Account No. 7986104185*, 643 F. Supp. 2d 577, 584 (S.D.N.Y. 2009). The right of access is heightened when the deprivation of property is at play. The common law presumption of access to seizure warrant affidavits is given "[e]specially great weight," and these documents "'should not remain under seal *absent the most compelling reasons.*'" *Id.* at 584 (emphasis added) (citations omitted); *see also Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65–66 (4th Cir. 1989) (stating that access to warrant materials may be denied "when sealing is 'essential to preserve higher values and is narrowly tailored to serve that interest'") (citations omitted).

Finally, in the event that this Court determines that some limits to the right of access are warranted, it is clear that partial unsealing and/or redaction can be used to address those concerns if valid. Notably, the Government fails to even address the alternative relief of unsealing the affidavits in redacted form. Even if the Court were to find more than a general conclusory basis for keeping the affidavits under seal, unsealing redacted versions of the affidavits is a "less restrictive alternative[] that *must* be considered." *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 895 (S.D. Tex. 2008) (emphasis added). Indeed, "[l]egitimate confidentiality interests will almost always be fully accommodated by redacting the troublesome words or passages." *Id.* (citation omitted); *see also Wells Fargo Bank*, 643 F. Supp. 2d at 585–86 (requiring redacted versions of warrant affidavits to be unsealed even though "the sensitivity of the Government's ongoing investigation and the potential that premature disclosure may thwart future seizures" were found to be "compelling reasons") (citation omitted). The Government offers no basis from which to conclude that redacted affidavits would jeopardize the ongoing investigation.

6

For the foregoing reasons, Mr. Selvaggio respectfully requests that the Court grant the motion to unseal the affidavits in support of search and seizure warrants in total, or in the alternative, unseal the affidavits in redacted form.

Dated:  August 29, 2016

Respectfully submitted,

/s/ Edward R. La Rue
EDWARD R. LA RUE
820 W. Superior Avenue, Suite 840
Cleveland, OH  44113

/s/ Laura Colombell Marshall
Laura Colombell Marshall (*pro hac vice*)
**HUNTON & WILLIAMS LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Telephone:  (804) 787-8013
Facsimile:  (804) 343-4773
Email:       lmarshall@hunton.com

*COUNSEL FOR BRANDON K. SELVAGGIO*

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on the 29th day of August, 2016, I caused to be electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties indicated on the electronic filing receipt, including but not limited to Mr. Phillip J. Tripi, Assistant U.S. Attorney for the Northern District of Ohio, whose offices are located at 801 W. Superior Avenue, Suite 400, Cleveland, Ohio 44113.

/s/ Laura Colombell Marshall
Laura Colombell Marshall (*pro hac vice*)
**HUNTON & WILLIAMS LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219

*Counsel for Brandon K. Selvaggio*